TASICH ET AL., D. B. A. BIG 3 TAVERN, APPELLANTS, *v.* BOARD OF LIQUOR CONTROL, APPELLEE.
SIEGEL ET AL., D. B. A. FRANKLIN CAFE, APPELLANTS, *v.* BOARD OF LIQUOR CONTROL, APPELLEE.

(Nos. 4930 and 4933—Decided October 6, 1953.)

*Mr. Robert R. Shaw,* for appellants.

*Mr. C. William O'Neill,* attorney general, *Mr. Ralph N. Mahaffey* and *Mr. Robert B. Rady,* for appellee.

HORNBECK, J. These causes present the same question. They are appeals from judgments of the Common Pleas Court sustaining the action of the Board of Liquor Control in affirming orders of the Department of Liquor Control refusing to issue D-3a permits to appellants.

The factual situation is simple. Appellants are the holders of D-3 permits and made application to the department for the issuance to them of D-3a permits upon the representation that they desired to operate their places of business after 1 a. m., and to sell intoxicating liquor after that hour. The permits were denied because of regulation No. 64 of the Board of Liquor Control by which the number of permits to be issued is frozen.

It is the contention of appellants that regulation No. 64 is in contravention of Section 6064-15, General Code, and that they, as holders of permits D-3, are entitled as a matter of right to the issuance to them of D-3a permits.

The pertinent part of Section 6064-15, General Code, is, "The following classes of permits may be issued"; then are listed permit A-1 to A-4, inclusive; permit B-1 to B-5, inclusive; permit C-1 to C-2, inclusive; permit D-1 to D-5, inclusive; and permits E, F, G, H and I.

The statutory provision for permit D-3 is as follows:

"A permit to the owner or operator of a hotel or restaurant licensed pursuant to Section 843-2 of the General Code, or a club, boat or vessel, to sell spirituous liquor and wine at retail, only by the individual drink in glass or from the container, for consumption on the premises where sold, only at tables where meals are sold. *No sales of intoxicating liquor shall be made by a holder of a D-3 permit after the hour of one a. m.* The fee for this permit shall be four hundred dollars for each location, boat or vessel." (Emphasis added.)

The provision for permit D-3a reads:

"In addition to all other fees herein provided, the holder of a D-3 permit shall pay an additional fee of four hundred dollars whenever his place of business is operated after the hour of one a. m. and spirituous liquor is sold or consumed after such hour. The holder of such permit may sell spirituous liquor during the same hours as the holders of class D-5 permits are allowed under the liquor control act or the regulations of the board of liquor control."

The sections under consideration, in the main, were enacted December 23, 1933. Section D-3a was enacted June 5, 1935.

It will be observed in an examination of the section that where permits authorize the sale of liquor they are defined as permits *to sell* spirituous liquor. Permit D-3a says nothing about such authorization. It is singular that in the subject matter of D-3 permit heretofore quoted and underscored, it is made an offense for a D-3 permit holder to sell intoxicating liquor after the hour of 1 a. m., but in the provision as to the D-3a permit, it is provided that if a sale is made after 1 a. m. the permittee shall pay an additional fee of $400. It would seem that this latter language authorizes the acceptance by the department of an addi-

tional fee of $400 for that which is a violation of a provision in permit D-3. It is unusual also that there is nothing in the subject matter under permit D-3a which directly sets out what the prerequisites are for an application of a D-3a permit. In the first sentence in the language defining permit D-3a the only mention of a permit is:

"* * * the holder of a D-3 permit shall pay an additional fee of four hundred dollars whenever his place of business is operated after the hour of one a. m. and spirituous liquor is sold or consumed after such hour."

Then follows in the next sentence this language:

"The holder of *such* permit may sell spirituous liquor during the same hours as the holders of class D-5 permits are allowed under the liquor control act or the regulations of the board of liquor control." (Emphasis added.)

By all rules of grammatical construction the adjective, "such," would modify D-3 permit. To give it the construction contended for by the appellee, it must be held that *such* permit refers to a D-3a permit. We believe that it may be so interpreted. The provision under consideration is poorly drawn.

Inasmuch as there seems to be some contradiction in the language defining permit D-3 and permit D-3a, it must be, if possible, reconciled. The language of permit D-3a permits the construction that when and if the holder of a D-3 permit sells spirituous liquor after 1 a. m., he comes into the classification of a D-3a permittee, and it would follow that he should be granted such a permit. However, such construction would put the stamp of approval on that which is prevented by the language under permit D-3.

If the one word, "legally," is inserted in the language defining permit D-3a it will give clearer meaning to the statute and bring it into harmony with that part of permit D-3 which prohibits the holder of such per-

mit from selling spirituous liquor after 1 a. m. It would seem that such insertion is by implication read into every statute. The section so written would then read:

In addition to all other fees herein provided, the holder of a D-3 permit shall pay an additional fee of four hundred dollars whenver his place of business is legally operated after the hour of one a. m. and spirituous liquor is sold or consumed after such hour.

The holder of a class D-3a permit, as to the sale of liquor, has practically the same rights and privileges as the holder of a D-5 permit. The holder of a D-3a permit thereby acquires a right additional to his privileges under his D-3 permit, which, before being granted, should be subject to the same proceedings and the same surveillance of the department as are incident to the issuance of all other classes of permits. The fact that the $400 additional sum to be paid by the holder of a D-3a permit is characterized as a fee lends support to the theory that it is not a penalty but payment for such permit as contemplated in all other classes of permits.

Some of the aids to the construction we adopt are found throughout the Liquor Control Act in its entirety. It contemplates that the department shall "grant or refuse permits for the manufacture, distribution, transportation and sale of beer and intoxicating liquor." Section 6064-8, General Code. Pursuant to this authority the Board of Liquor Control, exercising its right under Section 6064-3, General Code, has provided rules and regulations with reference to applications for and the issuance of permits as provided in the act.

Interpretation of the act including the section under immediate consideration here has been that there should be a formal application for a permit and an acting upon it by the department.

"In interpreting a statute, it is a well-settled rule that a resort may, under proper circumstances, be had to the construction given thereto by those charged with its execution and application, especially where it has long prevailed." 37 Ohio Jurisprudence, 698, Section 387, and many cases cited supporting the text.

Section 6064-14, General Code, specifically provides:

"No person shall directly or indirectly * * * manufacture, manufacture for sale, offer, keep or possess for sale, furnish or sell, or solicit the purchase or sale of any beer or intoxicating liquor in this state * * * unless such person shall have fully complied with the provisions of the Liquor Control Act or shall be the holder of a permit issued by the Department of Liquor Control and in force at the time."

This implies that no sale shall be made by a permittee without a permit regularly issued by authority of the act. In Section 6064-17, General Code, defining restrictions and limitations on the issuance of permits, class D-3a is included among the classes affected and in Section 6064-18, General Code, requiring bond from permittees as a prerequisite to the issuance of permits, there is included D-3a permit.

Upon a fair consideration of Section 6064-15, General Code, and particularly the classification of D-3a as a permit, we are of the opinion that, inasmuch as all permits are subject to regulations of the Board of Liquor Control, it, too, should be subject to the regulation No. 64, and that the director did not exceed his authority in denying this permit by reason of the regulation. The board did not err in affirming his order, and the Common Pleas Court did not err in affirming the order of the board.

The judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and MILLER, J., concur.